UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| Evan Middleton, | : |
| | : |
| Plaintiff, | : **FIRST AMENDED COMPLAINT** |
| | : |
| | : 22 Civ. 5101 (MKB)(RER) |
| v. | : _____ |
| | : |
| PAROLE OFFICER JONATHAN | : JURY TRIAL DEMANDED |
| MURDOCCO, SHIELD NO. 443, NYPD | : |
| POLICE DETECTIVE CHRISTOPHER | : |
| BREIDENBACH, SHIELD NO. 2432, | : |
| PAROLE AND NYPD OFFICERS | : |
| JOHN/JANE DOES NUMBERS ONE | : |
| THROUGH TEN, in their individual | : |
| capacities; | : |
| | : |
| Defendants. | : |

_____

Plaintiff, by his attorneys, SHULMAN AND HILL, PLLC, respectfully allege, upon information and belief, as follows:

### Nature of the Action

1.     This is an action pursuant to 42 U.S.C. § 1983 and 1988, seeking monetary damages for Plaintiff, due to Defendants' violations of Plaintiff's rights under the United States Constitution.

### Jurisdiction and Venue

2.     This action arises under 42 U.S.C. §§ 1983 and 1988.

3.     Plaintiff initially brought this action on July 29, 2022, in New York State Supreme Court, County of Kings.

4.     The action has been commenced within the applicable period for each claim.

1

*5.* Defendants removed the case to the Eastern District of New York on August 26, 2022. *Dkt. No. 1.*

6. The Court therefore has subject matter jurisdiction by operation of 28 U.S.C. 1441, based upon 28 U.S.C. §§ 1331(c)(1)(A) (federal question) and 1343(a)(3) (civil rights).

7. Venue properly lies in this district pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred here.

## Parties

8. Plaintiff Evan Middleton is, and was at all times relevant to this Complaint, a resident of New York.

9. Defendant Parole Officer Jonathan Murdocco, Shield No. 443 is and was at all times relevant herein an Officer with the New York Department of Corrections and Community Supervision ("DOCCS"). He is sued in his individual capacity.

10. Defendant NYPD Police Detective Christopher Breidenbach, Shield No. 2432 is and was at all times relevant herein an Officer with the New York City Police Department ("NYPD"), assigned to the Intel Cis Fio Program. He is sued in his individual capacity.

11. Defendant Parole and NYPD Officers John/Jane Does Number One Through Ten are and were at all times relevant herein officers, employees and agents of the DOCCS and the NYPD, respectively. They are sued in their individual capacity.

12. At all times relevant herein, the individual defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of either the NYPD or the New York DOCCS, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. They were acting for and on behalf of the NYPD or the New York DOCCS at all times relevant herein,

with the power and authority vested in them as officers, agents and employees of the NYPD or the New York DOCCS and incidental to the lawful pursuit of their duties as officers, employees and agents therefore.

## Statement of Facts

13.     On March 9, 2021, at around 9:45PM, Plaintiff was in his apartment at 753 MacDonough Street in Brooklyn, New York.

14.     Defendant Murdocco along with at least three Parole Officer John/Jane Does sought entry into the apartment, number 1F, in order to conduct a safety check on Plaintiff, who was on parole.

15.     Defendant Murdocco was the senior Parole Officer on scene and was directing the other Parole Officers in their course of their duties that evening.

16.     The leaseholder of the apartment, Sabrina Garris, admitted Murdocco and the three or more Parole Officer John/Jane Does (the "Parole Officer Defendants") into the apartment and informed them Plaintiff was in the shower.

17.     Plaintiff was asked to leave the shower, at which point he was placed into handcuffs by Parole Officer Jane Doe 1.

18.     Defendant Murdocco then searched a bedroom to the left of the apartment as you enter, and inside a jacket in the closet he found a black 9mm Taurus handgun.

19.     Defendant Murdocco then informed Plaintiff that they had recovered a firearm from a jacket inside that bedroom.

20.     Plaintiff all of the Parole Officer Defendants that he did not reside in any of the bedrooms in the house, but in fact resided in the living room area, as evidenced by, among other things, the presence of his bedding, his dresser storing his clothing, and his shoes.

21. Plaintiff informed all of the Parole Officer Defendants that the bedroom belonged to his brother, Donovan Middleton.

22. Ms. Garris also informed all of the Parole Officer Defendants that Plaintiff did not reside in the bedroom where they had found the firearm, that Plaintiff resided in the living room, and that the bedroom they had searched belonged to Donovan Middleton.

23. Plaintiff and Ms. Garris informed the Parole Officer Defendants that Plaintiff's brother, who was a security guard licensed to possess and carry a firearm, lived in the bedroom they had searched.

24. At some point during or prior to the search, Defendant Marducco had retrieved stored DOCCS information, written by prior Parole Officers, that described Plaintiff residing in the living room, and not the bedroom that had been searched.

25. Indeed, the jacket inside of which the firearm was recovered was a medium or large size jacket, and would be comically, impossibly small on Plaintiff's nearly-300-pound frame, but would fit appropriately on Plaintiff's brother's 180-pound frame.

26. Nonetheless, Defendant Murdocco called in for NYPD assistance, requesting additional back-up in order to secure the premises, properly retrieve the firearm, and complete the arrest of Plaintiff.

27. Soon thereafter, Defendant Breidenbach, along with several Police Officer John/Jane Does (the "Police Officer Defendants") arrived at 752 MacDonough Street, Apartment 1F.

28. Upon their arrival, both Ms. Garris and Plaintiff informed the Police Officer Defendants that the room being searched did not belong to Plaintiff, that it belonged to Plaintiff's brother, that Plaintiff resided in the living area, that Plaintiff's brother was a licensed security

4

guard permitted to carry a firearm, and that the jacket was Plaintiff's brothers and was far too small for Plaintiff.

29. Like the Parole Officer Defendants before them, the Police Officer Defendants ignored this information.

30. All of the Parole Officer Defendants and Police Officer Defendants saw that the jacket from which the gun was recovered was comically, impossible small for Plaintiff to have worn.

31. Defendant Breidenbach began searching the bedroom immediately, locating a safe near the bed itself that was locked, green leafy substance believed to be marijuana, and numerous items of mail.

32. The mail was addressed to numerous different addressees and was sitting unsorted in a large stack.

33. One of the addressees on the mail was Plaintiff. Other addressees included Plaintiff's brother, Plaintiff's cousin, and other people who had permission to use that location as a mailing address.

34. All of the Parole Officer Defendants and Police Officer Defendants saw the mail and the variety of addressees to which various pieces of mail were addressed.

35. A Police Officer John/Jane Doe requested that Plaintiff produce a key to the safe.

36. Plaintiff responded that he did not have a key, as it was not his safe and he did not live in that room.

37. Since Plaintiff lived in the living room, Plaintiff was brought into the living room to recover his key ring from his pants pocket.

38. There was no key on Plaintiff's key ring that would open the safe in the bedroom.

39. All of the Parole Officer and Police Officer Defendants were present when it was revealed Plaintiff did not have a key to the safe.

40. The safe was broken open in order to complete the search of the bedroom.

41. Inside the safe was two magazines containing 9mm ammunition, along with paperwork for the black 9mm Taurus firearm that had been found in the jacket.

42. The paperwork for the firearm bore the name of Plaintiff's brother, Donovan Middleton.

43. The firearm itself, which bore serial number ABJ918124, was and is lawfully registered to Donovan Middleton.

44. All of the Parole Officer and Police Officer defendants saw the documents naming Donovan Middleton, not Plaintiff, as the firearm owner.

45. At that time, despite the absence of probable cause, Plaintiff was placed under arrested for the firearm, ammunition, and marijuana.

46. Before transporting Plaintiff, a Police Officer Defendant offered to recover clothing for Plaintiff as he had been handcuffed nearly immediately after leaving the shower and was only wearing underpants.

47. Plaintiff directed the Police Officer defendants to the living room, where they retrieved his sweatpants from his dresser, located next to his shoes and bedding, because that is where Plaintiff resided.

48. All of the Parole and Police Officer Defendants saw that Plaintiff's clothing was located in the living room area, not in the bedroom where the gun was located.

49. Plaintiff was then transported to the 73rd Precinct before being taken to Brooklyn Central Booking for arraignment.

*False Statements to Prosecutors and DOCCS Resulting in Plaintiff's Detention*

50. It is believed and therefore averred that while Plaintiff was pending arraignment in Brooklyn Central Booking, defendants Breidenbach and Marducco made a variety of false and misleading statements resulting in the commencement of parole and criminal proceedings against Plaintiff and ensuring his continued detention.

51. It is believed and therefore averred that defendants Breidenbach and Marducco communicated with Kings County Early Case Assessment Bureau ("ECAB") prosecutors while Plaintiff was being processed awaiting arraignment.

52. It is believed and therefore averred that defendants Breidenbach and Marducco told ECAB prosecutors that the gun and contraband had been recovered from a bedroom identified by a leaseholder as Plaintiff's bedroom, a fact they knew to be a lie.

53. It is believed and therefore averred that defendant Marducco spoke to DOCCS supervisors in applying for a parole warrant and detainer while Plaintiff was being processed awaiting arraignment.

54. It is believed and therefore averred that defendant Marducco told DOCCS supervisors that that the gun and contraband had been recovered from a bedroom identified by a leaseholder as Plaintiff's bedroom, a fact that he knew to be a lie.

55. It is believed and therefore averred that defendant Marducco told DOCCS supervisors and ECAB prosecutors that the notes from prior Parole Officers assigned to Plaintiff's case indicated that he was staying in a bedroom and not in the living room, a fact that he knew to be a lie.

56. It is believed and therefore averred that defendants Breidenbach and Marducco did **not** tell ECAB prosecutors or DOCCS supervisors the following omissions (the "Material Omissions"):

    a)  They had also recovered mail bearing the name of every other resident of the apartment from the same location they recovered Plaintiff's mail;

    b)  Plaintiff's brother was a licensed security guard authorized to carry a firearm;

    c)  Plaintiff didn't have the keys to the safe where the ammunition was found;

    d)  The safe contained paperwork for the firearm with Donovan Middleton's name on it;

    e)  The jacket where the gun was found was comically, impossibly small for Plaintiff's 300-pound frame;

    f)  Plaintiff's clothes, bedding, shoes and keys were all in the living room;

    g)  Plaintiff told Defendants that he lived in the living room, not the bedroom;

    h)  The leaseholder told Defendants that Plaintiff lived in the living room, not the bedroom.

57. Solely on the basis of defendant Marducco's lies and Material Omissions, DOCCS issued or caused to issue a Parole Warrant requiring the detention of Plaintiff pending further parole process.

58. The only specifications on the Parole Warrant were the gun, the ammunition, and the marijuana in Plaintiff's brother's room for which Plaintiff was arrested.

59. Solely on the basis of the lies and Material Omissions of defendants Breidenbach and Marducco, prosecutors from the Kings Country District Attorney's Office drafted a criminal

8

complaint charging Plaintiff with criminal offenses for possessing a gun, ammunition, and marijuana.

60. It is believed and therefore averred that defendant Breidenbach signed a criminal complaint attesting to these false facts and making these material omissions that was subsequently presented during Plaintiff's arraignment.

61. Solely on the basis of these lies and deliberation omissions of defendants Breidenbach and Marducco, presented to the Court by Kings County arraignment prosecutors, an arraigning judge set bail on the Plaintiff in the amount of $50,000.

62. Plaintiff was unable to make bail (and regardless was held on a Parole Warrant) and was subsequently transferred to Riker's Island from Brooklyn Central Booking.

*False Statements to the Grand Jury and at Parole Revocation, and Dismissal of Criminal Case*

63. In early April, Plaintiff appeared telephonically at a preliminary hearing pursuant to his Parole warrant.

64. At that preliminary hearing, a female Parole Officer, Parole Officer Jane Doe 1, testified falsely, claiming that:

    a) The bedroom where the gun was recovered had been identified as Plaintiff's bedroom by the leaseholder;

    b) The bedroom where the gun was recovered had been identified as Plaintiff's bedroom by DOCCS notes from prior parole officer visits;

65. At that preliminary hearing, Parole Officer Jane Doe 1 also made the same Material Omissions that were made prior by defendants Breidenbach and Murdocco.

66. Later in April, Plaintiff appeared at a final probation revocation hearing regarding the same specifications.

9

67. At that final hearing, a female Parole Officer, Parole Officer Jane Doe 1, testified falsely by offering the same untrue facts and making the same Material Omissions she had made at the preliminary hearing.

68. Plaintiff's parole was revoked solely as a result of these false statements.

69. Plaintiff was given a 12-month time assessment and remanded to state custody, but was held at Riker's Island for the pendency of his criminal case.

70. At some point in March or early April, Kings Country prosecutors presented their case against Plaintiff to a Grand Jury.

71. At the Grand Jury, defendant Marducco testified falsely by offering the same untrue facts and making the same Material Omissions he had previously made to DOCCS and to Kings Country prosecutors.

72. At the Grand Jury, defendant Marducco testified falsely by offering the same untrue facts and making the same Material Omissions he had previously made to Kings Country prosecutors.

73. Solely as a result of defendant Breidenbach and Defendant Marducco's false testimony, an indictment issued against Plaintiff bearing indictment number IND-70697-21/001.

74. At some point in late 2021, the Plaintiff's DNA was compared against DNA swabs taken from the firearm recovered from Plaintiff's house.

75. That comparison was performed by the New York Office of the Chief Medical Examiner Department of Forensic Biology.

76. The comparison revealed that Plaintiff was excluded as a contributor to the DNA found on the gun.

77. As a result of this irrefutable scientific evidence, Plaintiff's criminal case was dismissed and sealed on December 7, 2021.

78. However, due to the improperly obtained parole violation, Plaintiff remained in custody after the dismissal of his criminal case.

79. Plaintiff was transferred out of Riker's Island and proceeded to continue to remain incarcerated until he was released from his parole detainer in mid-March of 2022, approximately one year after his unlawful arrest.

80. Plaintiff perfected an appeal of his wrongful parole revocation while in custody completing his time assessment.

81. Approximately one month after his release, Plaintiff learned that his appeal had been successful, and his parole revocation had been vacated after review.

82. Parole was subsequently immediately released from parole supervision.

83. At no point prior to his arrest was Plaintiff aware of any contraband or firearms in the home where he lived, nor did he exercise dominion, care or control over the spaces where contraband or a firearm was recovered.

**Damages**

84. The unlawful, intentional, willful, deliberately indifferent, and reckless acts and omissions of the individual Defendants caused Mr. Middleton to be improperly arrested and imprisoned, his parole unfairly revoked, and forced to serve approximately one year in custody for a crime he did not commit.

85. As a direct result of Defendants' conduct and omissions, Mr. Middleton sustained injuries and damages, including loss of freedom and youth for over one year, pain and suffering, mental anguish, emotional distress, indignities, degradation, permanent loss of natural

psychological development, and restrictions on all forms of personal freedom including but not limited to diet, sleep, personal contact, educational opportunity, vocational opportunity, athletic opportunity, personal fulfillment, sexual activity, family relations, reading, television, movies, travel, enjoyment, and freedom of speech and expression.

86. As a direct result of Defendants' conduct and omissions, Mr. Middleton was deprived of his familial relationships, romantic relationships, and friendships.

87. As a direct result of Defendants' conduct and omissions, Mr. Middleton sustained economic injuries and damages, including loss of income and loss of career opportunities.

88. As a direct result of Defendants' conduct and omissions, Mr. Middleton sustained physical injuries, including physical pain and suffering, personal injuries, physical illness, and inadequate medical care.

## CAUSES OF ACTION

### COUNT I
### 42 U.S.C. § 1983: False arrest and false imprisonment in violation of the Fourth and Fourteenth Amendments
*(against all defendants)*

89. Plaintiff repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

90. Acting individually and in concert, Defendants deprived Plaintiff of his rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free of unreasonable search and seizure and to their liberty by detaining, searching, arresting, confining, causing the confinement, and/or continuing the confinement of these plaintiffs without any privilege to do so.

91. Plaintiff was conscious of his confinement.

92. Plaintiff did not consent to his confinement.

93. When defendants deprived Plaintiff of his constitutional rights, each defendant did so intentionally, knowingly, willfully, recklessly, and/or with deliberate indifference to the lawfulness of his or her conduct.

94. The above misconduct by defendants was outrageous and shocking to the conscience.

95. By virtue of the foregoing, defendants are liable to the Plaintiff for compensatory and punitive damages under 42 U.S.C. § 1983.

## COUNT II
### 42 U.S.C. § 1983: Malicious prosecution in violation of the Fourth, Fifth, and Fourteenth Amendments
(*against Police Officer Defendants and Marducco*)

96. Plaintiff repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

97. Defendants, acting individually and in concert with malice and knowing that probable cause did not exist to prosecute Mr. Middleton for possession of a firearm and of marijuana, intentionally caused Mr. Middleton to be arrested, charged, and criminally prosecuted for those crimes, thereby violating Mr. Middleton's clearly established Fourth and Fourteenth Amendment rights to be free from prosecution without probable cause.

98. The individual defendants, acting individually and in concert, knowingly and intentionally fabricated evidence for the purpose of supporting unwarranted criminal charges, and intentionally withheld and misrepresented exculpatory evidence, all of which resulted in an arrest, prosecution, and detention without probable cause.

99. The individual defendants performed the above-described acts under color of state law intentionally, with reckless disregard for the truth, and with deliberate indifference to Mr.

Middleton's clearly established constitutional rights. No reasonable police or parole officer in 2021 would have believed this conduct was lawful.

100. The criminal prosecution terminated in Mr. Middleton's favor on December 7, 2021, when the criminal case against Mr. Middleton was dismissed and sealed.

101. The individual defendants' acts and omissions described in the preceding paragraphs were the direct and proximate cause of Mr. Middleton's injuries, because they knew, or should have known, that their conduct would result in the wrongful arrest, charging, prosecution, conviction, and incarceration of Mr. Middleton.

## COUNT III
### 42 U.S.C. § 1983: Malicious prosecution in violation of the Fourth, Fifth, and Fourteenth Amendments
(*against Parole Officer Defendants only*)

102. Plaintiff repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

103. The Parole Officer Defendants, acting individually and in concert with malice and knowing that probable cause did not exist to detain and revoke Mr. Middleton for possession of a firearm and of marijuana, intentionally caused Mr. Middleton to be detained and revoked for those specifications, thereby violating Mr. Middleton's clearly established Fourth and Fourteenth Amendment rights to be free from detention and revocation without probable cause.

104. The individual defendants, acting individually and in concert, knowingly and intentionally fabricated evidence for the purpose of supporting unwarranted parole specifications, and intentionally withheld and misrepresented exculpatory evidence, all of which resulted in an detention and revocation without probable cause.

105. The individual defendants performed the above-described acts under color of state law intentionally, with reckless disregard for the truth, and with deliberate indifference to Mr. Middleton's clearly established constitutional rights. No reasonable parole officer in 2021 would have believed this conduct was lawful.

106. The criminal prosecution terminated in Mr. Middleton's favor in March of 2022, when his parole revocation was overturned on appeal.

107. The individual defendants' acts and omissions described in the preceding paragraphs were the direct and proximate cause of Mr. Middleton's injuries, because they knew, or should have known, that their conduct would result in the wrongful arrest, charging, prosecution, conviction, and incarceration of Mr. Middleton.

**COUNT IV**
**42 U.S.C. § 1983: Denial of Due Process and a Fair Trial under the Fifth, Sixth and Fourteenth Amendments**
*(against all defendants)*

108. Plaintiff repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

109. Defendants Marducco, Breidenbach and Parole Officer Jane Doe 1, individually and in concert, manufactured false evidence against the Plaintiff.

110. They did so deliberately, willfully, reckless and/or with deliberate indifference to the truth and for the purpose of causing criminal and parole proceedings to be initiated and/or continued against Plaintiff.

111. Defendants Marducco, Breidenbach and Parole Officer Jane Doe 1, while within the scope of their employment with the NYPD and DOCCS, deprived Mr. Middleton of his clearly established right to due process of law and a fair trial by fabricating inculpatory evidence and

15

failing to disclose exculpatory information, including, without limitation, that mail for the other residents was recovered from Donovan Middleton's bedroom, that the leaseholder informed them the bedroom was not Plaintiffs, that the ammunition was found alongside paperwork tying Donovan, not Plaintiff Evan Middleton, to the firearm, and the DOCCS notes that indicated that Plaintiff did not in fact reside in the bedroom where the gun was recovered, and other evidence.

112. Defendants Marducco, Breidenbach and Parole Officer Jane Doe 1 performed the above-described acts under color of state law, intentionally, with reckless disregard for the truth, and with deliberate indifference to Mr. Middleton's clearly established constitutional rights. No reasonable Police or Parole officer in 2021 would have believed this conduct was lawful.

113. Defendants Marducco, Breidenbach and Parole Officer Jane Doe 1 knew this manufactured inculpatory evidence and omitted exculpatory evidence would be likely to influence a jury's or other fact-finder's decision at trial or revocation proceeding.

114. As a result of Defendants Marducco, Breidenbach and Parole Officer Jane Doe 1 providing false inculpatory evidence and not providing material exculpatory evidence to prosecutors and DOCCS staff, a criminal prosecution and parole revocation was initiated against the Plaintiff and the liberty of Plaintiff was infringed or curtailed.

115. The conduct of Defendants Marducco, Breidenbach and Parole Officer Jane Doe 1 was outrageous and shocking to the conscience.

116. By virtue of the foregoing, Defendants Marducco, Breidenbach and Parole Officer Jane Doe 1 are liable to the Plaintiff for compensatory and punitive damages under 42 U.S.C. § 1983.

## COUNT V
## 42 U.S.C. § 1983: Failure to Intervene
*(against all defendants)*

117. Plaintiff repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

118. By their conduct and under color of state law, defendants, acting within the scope of their employment with the NYPD or DOCCS, had opportunities to intervene on behalf of Mr. Middleton to prevent his false arrest, malicious prosecution, false imprisonment, parole detainer and revocation, and deprivation of liberty without due process of law. Yet, with deliberate indifference, they declined to do so.

119. Defendant's failures to intervene violated Mr. Middleton's clearly established constitutional right to be free from unreasonable search and seizure, and not to be deprived of liberty without due process of law as guaranteed by the Fourth, and Fourteenth Amendments. No reasonable police or parole officer in 2021 would have believed that failing to intervene to prevent these Defendants from fabricating inculpatory evidence, withholding material exculpatory, deliberately failing to conduct a constitutionally adequate investigation, and causing Mr. Middleton to be arrested, prosecuted, detained and revoked without probable cause were lawful.

120. Defendants' acts and omissions, as described in the preceding paragraphs, were the direct and proximate cause of Mr. Middleton's injuries. Defendants knew, or should have known, that their conduct would result in Mr. Middleton's wrongful arrest, charging, prosecution, conviction, and incarceration.

## **RELIEF DEMANDED**

WHEREFORE, Evan Middleton respectfully requests that the Court grant the following relief:

      A.      An award of compensatory damages against all Defendants, jointly and severally, in an amount to be determined by the finder of fact;

      B.      An award of nominal damages against all Defendants in an amount to be determined by the finder of fact;

      C.      An award of punitive damages against all Defendants in an amount to be determined by the finder of fact;

      D.      Reasonable attorney's fees and costs; and,

      E.      Such other and further relief as this Court deems just and proper.


Respectfully Submitted,

*Cary London*
_____
Cary London
Shulman & Hill, PLLC
Attorneys for Plaintiff
One State Street Plaza, 15th Floor
New York, New York, 10004
Phone: (212) 221-1000
Email: Cary@Shulman-Hill.com